## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| HOLTEC INTERNATIONAL CORPORATION, a Delaware corporation, and HOLTEC DECOMMISSIONING INTERNATIONAL, LLC, a Delaware limited liability company, | Case No. ___24-684_____ |
| Plaintiffs, | |
| v. | |
| MICHIGAN STATE UTILITY WORKERS COUNCIL (MSUWC), | |
| Defendant. | |

### COMPLAINT TO VACATE ARBITRATION AWARD

Plaintiff Holtec International and Plaintiff Holtec Decommissioning, by counsel, bring this action against the Michigan State Utility Workers Council (the "Union") to vacate an arbitration award, to obtain relief from the remedy awarded, and to stay enforcement of the award pending this Court's determination as to its validity.

### PARTIES

1.      Plaintiff Holtec International Corporation is a corporation organized and existing under the laws of the State of Delaware. Holtec International's

1

business purpose is providing engineering consulting to the public utility industry.
Its principal place of business is in Camden, New Jersey.

    2.    Plaintiff Holtec Decommissioning International, LLC, is a limited
liability company organized and existing under the laws of the State of Delaware.
Holtec Decommissioning's business purpose is the decommissioning of nuclear
power plants. Its principal place of business is in Camden, New Jersey.

    3.    Plaintiff Holtec Decommissioning is a wholly owned subsidary of
plaintiff Holtec International.

    4.    Plaintiff Holtec Decommissioning is a separate legal entity from Holtec
International.

    5.    Defendant Michigan State Utility Workers Council is a labor
organization as defined under the National Labor Relations Act, 29 U.S.C. § 152(5)
& § 185. The Union's main office is located in Charlotte, Michigan.

## JURISDICTION AND VENUE

    6.    The claims asserted in this complaint are brought under Section 301 of
the Labor Management Relations Act, 29 U.S.C. § 185.

    7.    This Court has jurisdiction over this matter under 29 U.S.C. § 185, 28
U.S.C. § 1331, and 28 U.S.C. § 1337.

    8.    Venue in this district is proper under 28 U.S.C. § 1391(b)(1) and (2)
and under 29 U.S.C. § 185. The Union maintains its principal office in this judicial

district, in Charlotte, Michigan, in Eaton County. The place of employment at issue, the Palisades Nuclear Power Plant, is located in this judicial district, in Covert, Michigan, in Van Buren County. Further, the arbitration proceeding at issue was held in this judicial district, in South Haven, Michigan.

9.     This action is timely filed under applicable federal law, because it is filed within three months of April 1, 2024, which is the date on which Holtec International and Holtec Decommissioning received a copy of the arbitrator's award. *See Occidental Chem. Corp. v. Int'l Chem. Workers Union*, 853 F.2d 1310, 1316 (6th Cir. 1988); *Int'l Bhd. of Elec. Workers, Loc. 58, AFL-CIO v. Metro Elec. Eng'g Techs., Inc.*, 880 F. Supp. 2d 770, 776 (E.D. Mich. 2012). A true and correct copy of the arbitrator's award is attached to this complaint as Exhibit A.

## FACTS

### The agreements between Holtec Decommissioning and the Union

10.     In June 2022, Holtec International purchased the Palisades Nuclear Generating Plant from its prior owner, Entergy Nuclear Operations, Inc.

11.     Holtec International is the Nuclear Regulatory Commission-licensed owner of the Palisades Nuclear Generating Plant.

12.     Holtec International does not now and has not ever employed bargaining unit employees at the Palisades Nuclear Generating Plant.

13.     Holtec International was not and is not a signatory to the collective bargaining agreement or the related subsequent memorandum of agreements between Holtec Decommissioning and the Union.

14.     Holtec Decommissioning is the Nuclear Regulatory Commission-licensed operator of the Palisades Nuclear Generating Plant.

15.     As the NRC-licensed operator of the Palisades Nuclear Generating Plant, Holtec Decommissioning entered into a memorandum of agreement with the Union. A true and correct copy of the 2022 memorandum of agreement is attached to this complaint as Exhibit B.

16.     In the 2022 memorandum of agreement, Holtec Decommissioning and the Union agreed that a number of employees employed by Entergy at the nuclear plant would be transferred to be employed by Holtec Decommissioning. (2022 MOA, Exh. B at 1.)

17.     As a result of this transfer of employees, James Charles, a maintenance mechanic at the nuclear plant, became an employee of Holtec Decommissioning on June 28, 2022.

18.     In the 2022 memorandum of agreement, Holtec Decommissioning agreed to assume the collective bargaining agreement with certain modifications effective June 1, 2015, through June 1, 2019, between the Union and Entergy, which the Union and Entergy had amended and extended through a May 24, 2018

4

memorandum of agreement. (2022 MOA, Exh. B at 1.) A true and correct copy of the

collective bargaining agreement between the Union and Entergy is attached to this

complaint as Exhibit C. A true and correct copy of the 2018 memorandum of

agreement between the Union and Entergy amending and extending the collective

bargaining unit is attached to this complaint as Exhibit D.

19.     Under the 2022 memorandum of agreement between the Union and

Holtec Decommissioning, whenever the collective bargaining agreement uses the

terms "Company," "Employer," or any reference to or version of "Entergy," post

transaction those terms refer to Holtec Decommissioning. (2022 MOA, Exh. B at 1.)

20.     Article V, § 1 of the collective bargaining agreement, entitled

"Management Rights," provides that

> It is agreed that the management of the Company, the
> supervision of all operations, the control of the property,
> and the composition, assignment, direction and
> determination of the size of the working forces belong to
> and are vested in the Company, except as they may be
> otherwise specifically limited in this Agreement.

21.     Article VII, § 16 of the collective bargaining agreement defines

"continuous service"  as "continuous service in the employ of the Company and shall

consist of the entire period of an employee's employment or the aggregate of

separate periods of employment, except as otherwise provided in this Section."

Section 16(c) provides as follows:

> An employee, except a probationary employee, who is unable to work as a result of a non-occupational sickness or personal injury shall be granted an extended leave of absence for a period not to exceed one year from and after the last day worked or day for which the employee received sick leave benefits in accordance with the provisions of Article XIII. Likewise, an employee who is unable to work as a result of an injury arising out of and in the course of his employment with the Company, and covered by the Michigan Workers Disability Compensation Act, shall be granted an extended leave of absence for a period not to exceed one year from and after the last day worked or day for which the employee received supplemental pay in accordance with the provisions of Article XIII. However, an extended leave of absence beyond such time, but not to exceed two years from and after the last day worked or day for which the employee received sick leave benefits or supplemental pay will be authorized by the Company. [CBA, Exh. C at Art. VII, § 16(c).]

22.    The 2022 memorandum of agreement identifies the following benefits to be provided to full-time regular employees of Holtec Decommissioning who are on short-term disability:

> Full time regular employees will be eligible for Short Term Disability (STD) benefits with the following provisions:
>
> • 100% of base pay for 12 weeks and 70% of base pay for the next 13 weeks. [2022 MOA, Exh. B at 2.]

23.    This short-term-disability provision provides base pay; it does not mention medical, vision, or dental benefits.

6

24.     The 2022 memorandum of agreement identifies the following benefits to be provided to full-time regular employees who are on long-term disability:

> Full time regular employees will be eligible for Long Term Disability benefits with the following provisions:
>
> • Employer -paid coverage will be 50% of base pay,
>
> Supplemental coverage will be 100% Employee-paid and will be offered up to 60% of base pay. [2022 MOA, Exh. B at 4.]

25.     This long-term-disability provision provides base pay; it does not mention medical, vision, or dental benefits.

26.     The collective bargaining agreement, as amended by the 2022 memorandum of agreement, provides that either Holtec Decommissioning or the Union may submit unresolved grievances for binding arbitration. (*E.g.*, CBA, Exh. C at Art. IV.)

27.     The collective bargaining agreement provides no arbitrator shall have the power to change any of the provisions of the collective bargaining agreement. (CBA, Exh. C at Art. IV, § 2.)

**The grievance of Union member James Charles**

28.     Charles, the above-mentioned employee of Holtec Decommissioning, notified Holtec Decommissioning on September 26, 2022, that he needed leave for a nonoccupational medical condition.

29.     Holtec Decommissioning granted Charles leave under the Family Medical Leave Act that same day, September 26, 2022.

30.     Charles's last day worked was September 26, 2022.

31.     Holtec Decommissioning, in accordance with the 2022 memorandum of agreement, awarded Charles forty hours of sick-leave pay.

32.     Charles applied for and was approved for six months of short-term disability benefits, through Holtec Decommissioning's benefits provider, New York Life. The end date for the six-month period was March 26, 2023.

33.     Charles's FMLA leave covered 12 weeks, which ran concurrently with his forty hours of sick-leave pay and six months of short-term disability benefits.

34.     While Charles was on short-term disability, Holtec Decommissioning provided Charles with medical, vision, and dental benefits, even though the 2022 memorandum of agreement and the group health plan does not provide for medical, vision, and dental benefits as a short-term-disability benefit. (2022 MOA, Exh. B at 2.)

35.     During the period when Charles was on FMLA and short-term disability, he repeatedly fell behind on his payments for medical, vision, and dental coverage. Holtec Decommissioning responded by reminding him to make the payments (which he ultimately did), not by terminating his benefits, as it could have.

8

36.     On May 19, 2023, New York Life approved Charles for long-term disability benefits, with the approval retroactive to March 27, 2023.

37.     On May 20, 2023, Holtec Decommissioning terminated Charles because he was approved for long-term disability benefits, he was unable to work, and he was unable to confirm when or if he could ever return to work.

38.     The group health plan did not provide for and Holtec Decommissioning has never provided medical, vision, and dental benefits to employees on long-term disability.

39.     Upon his termination, Charles, in accordance with the group health plan, had his medical, vision, and dental benefits terminated.

40.     Kimberly Mahurin, the human resources manager at the Palisades Nuclear Generating Plant, testified Charles and Holtec Decommissioning had a mutual understanding that if he was able to return to work, he would be rehired. The Union presented no contradictory testimony, and did not call Charles or any other witness to testify at all.

41.     Charles did not provide Holtec Decommissioning with any information indicating when or if he could return to work, and he has not returned to work.

42.     Under Article VII, § 16(c) of the collective bargaining agreement, an employee who is unable to work as a result of a non-occupational sickness or personal injury shall be granted an extended leave of absence for a period not to

9

exceed one year from and after the last day worked or day for which the employee received sick benefits. (CBA, Exh. C at Art. VII, § 16(c).)

43.    Charles, being unable to work as a result of a non-occupational sickness, received an extended period of absence that did not exceed one year.

44.    Under Article VII, § 16(c) of the collective bargaining agreement, Holtec Decommissioning may authorize an extended leave of absence not to exceed two years. (CBA, Exh. C at Art. VII, § 16(c).)

45.    Charles did not request an extended leave of absence that was more than one year and less than two years, and Holtec Decommissioning did not authorize an extended leave of absence of more than one year and less than two years.

**The arbitrator's decision**

46.    The first issue presented to the arbitrator was whether Holtec Decommissioning breached the collective bargaining agreement, as amended by the 2018 memorandum of agreement and the 2022 memorandum of agreement, by denying Charles the right to remain employed and to accrue seniority and continuous service for two years instead of for one year under Article VII, § 16(c) of the collective bargaining agreement.

47.     The second issue presented to the arbitrator was whether Holtec
Decommissioning breached those agreements by not providing medical, vision, and
dental benefits to Charles after he transitioned to long-term disability.

48.     The signatories to the collective bargaining agreement, Holtec
Decommissioning and the Union, participated in the arbitration on behalf of the
employer and Charles, respectively.

49.     The Union, in the caption of its post-hearing brief, identified Holtec
International, a non-party to this arbitration, as the respondent.

50.     Holtec Decommissioning, in the caption of its post-hearing brief,
identified Holtec Decommissioning as the respondent.

51.     On April 1, 2024, Doyle O'Connor, the arbitrator, entered the
arbitration award against Holtec International. (Award, Exh. A.)

52.     The arbitration award was delivered to both the Union and counsel for
Holtec Decommissioning on April 1, 2024. A true and correct copy of the email
transmitting the arbitration award to the Union and to counsel for Holtec
Decommissioning is attached as Exhibit E.

53.     The arbitration award identifies the "Employer" as Holtec
International in the caption of the case. (*E.g.*, Award, Exh. A, at 1).

11

VOLUNTARY LABOR ARBITRATION
AMERICAN ARBITRATION ASSOCIATION

In the Matter of:

HOLTEC INTERNATIONAL,                    Arbitrator: **Doyle O'Connor**
Employer,                                Grievant: James Charles
                                         Issue: Benefits & Termination
-and-

MICHIGAN STATE UTILITY
WORKERS COUNCIL (MSUWC),
Union.
_____/

Appearances:

EMPLOYER:
Armin Moeller
Ashley Cannady

UNION:
George Kruszewski

Witnesses:

 Kimberly Mahurin, HR Holtec Decommissioning
_____/


**DECISION AND AWARD**


54.    The arbitrator stated that "[t]he question presented is whether the

*Employer* has violated the contract by changing benefit and status issues for an

employee on a non-duty disability leave. . . . [T]he dispute is over the propriety of

the *Employer's* handling of issues related to Charles's long term leave of absence

due to a non-duty disability or illness." (*E.g.*, Award, Exh. A, at 2) (emphasis added).

Because the arbitrator identified Holtec International, and Holtec International

alone, as the "Employer," he framed the question presented as whether Holtec International violated the contract.

55.     The arbitrator ordered that "[t]he *Employer* is to promptly notify the relevant carrier(s) of Charles' return to employment status and of the need to reinstate insurance coverage. The *Employer* will remain liable for net costs until such reinstatement of coverage is secured." (*E.g.*, Award, Exh. A, at 16–17) (emphasis added). By the arbitrator's own designation of Holtec International as the "Employer," he made an award against Holtec International.

56.     Holtec International did not appear before the arbitrator or participate in this arbitration.

57.     No evidence was presented showing Holtec International was an employer of the Union at the Palisades Nuclear Generating Plant or a signatory to the collective bargaining agreement with the Union.

58.     As noted in the arbitrator's award, the parties agreed to arbitration before a single arbitrator, rather than using the three arbitration panel provided for in the collective bargaining agreement. (Award, Exh. A at 1.)

59.     The arbitrator awarded Charles immediate restoration to employment with the Employer, identified by the arbitrator as Holtec International, to extend for two years, until March 26, 2025 or until Charles returned to fitness for duty, whichever occurred earlier. (Award, Exh. A at 16.)

13

60.     Under the arbitrator's construction of Article VII, § 16(c) of the collective bargaining agreement, the Employer, which the arbitrator identified as Holtec International, must, as a matter of the contract terms, always grant an employee an extended leave of absence not to exceed two years from and after the last day worked or day for which the employee received sick leave benefits or supplemental pay.

61.     Under the arbitrator's construction of Article VII, § 16(c) of the collective bargaining agreement, the arbitrator effectively struck the first sentence, the second sentences, and part of the third sentence of § 16(c), as follows:

> (c) ~~An employee, except a probationary employee, who is unable to work as a result of a non-occupational sickness or personal injury shall be granted an extended leave of absence for a period not to exceed one year from and after the last day worked or day for which the employee received sick leave benefits in accordance with the provisions of Article XIII. Likewise, an employee who is unable to work as a result of an injury arising out of and in the course of his employment with the Company, and covered by the Michigan Workers' Disability Compensation Act, shall be granted an extended leave of absence for a period not to exceed one year from and after the last day worked or day for which the employee received supplemental pay in accordance with the provisions of Article XIII. However,~~ an extended leave of absence ~~beyond such time, but~~ not to exceed two years from and after the last day worked or day for which the employee received sick leave benefits or supplemental pay, will be authorized by the Company.

Case 1:24-cv-00685   ECF No. 1,  PageID.15   Filed 07/01/24   Page 15 of 21

62.     The arbitrator's award treated 143 words of Article VII, § 16(c) as surplusage.

63.     The arbitrator awarded Charles health insurance coverage (i.e., medical, dental, and vision benefits) for the duration of two years of extended leave. (Award, Exh. A at 16.)

64.     The 2022 memorandum of agreement does not provide medical, dental, or vision benefits for employees on short-term disability or on long-term disability. (2022 MOA, Exh. B at 2, 4.)

## Count I – Vacate award against Holtec International

65.     Plaintiffs repeat and re-allege paragraphs 1 through 64 as though fully set forth herein.

66.     Arbitration is a matter of contract, and arbitration is strictly a matter of consent. *Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1192 (2024).

67.     An arbitration award must be vacated if the arbitrator exceeds his authority. *See* 9 U.S.C. § 10; *Int'l Bhd. of Teamsters, Loc. 519 v. United Parcel Serv., Inc.*, 335 F.3d 497, 503 n.2 (6th Cir. 2003).

68.     An arbitrator acts outside his authority if the arbitrator resolves a dispute not committed to arbitration. *Michigan Fam. Res., Inc. v. Serv. Emps. Int'l Union Loc. 517M*, 475 F.3d 746, 753 (6th Cir. 2007).

69.    An arbitrator exceeds his authority if he enters an award against an entity that has not consented to arbitration. *Town & Country Salida, Inc. v. Dealer Computer Servs., Inc.*, No. 11-15430, 2012 WL 1964106, at *5 (E.D. Mich. May 31, 2012), *aff'd*, 521 F. App'x 470, 473 (6th Cir. 2013).

70.    An arbitrator exceeds his authority if he enters an award against a non-party. *Sheet Metal Employers Industry Promotion Fund v. Absolut Balancing Co. Inc.,* 884 F. Supp. 2d 617, 622–23 (E.D. Mich. 2012).

71.    Holtec International is not a party to the 2022 memorandum of agreement, to the 2018 memorandum of agreement, or to the 2015 collective bargaining agreement.

72.    Holtec International did not consent to arbitration with the Union.

73.    Charles has never been employed by Holtec International.

74.    The arbitrator exceeded his authority when he entered an award against Holtec International.

75.    The arbitrator was not even arguably construing the collective bargaining agreement, the 2018 memorandum of agreement, or the 2022 memorandum of agreement when he entered an award against Holtec International, which is not mentioned in any of those contracts and which is not a party to any of those contracts.

76. An arbitration award is invalid and unenforceable against a party not named in the award. *See Town & Country Salida, Inc. v. Dealer Computer Servs.*, *Inc.*, 521 F. App'x 470, 474 (6th Cir. 2013).

77. Once an award is issued, the arbitrator can take no further action unless a party within twenty days requests the arbitrator "correct any clerical, typographical, technical, or computational errors in the award." American Arbitration Association Labor Rules, Rule 40, p. 17; *see also Green v. Ameritech Corp.,* 200 F.3d 967, 976–78 (6th Cir. 2000).

78. The arbitrator "retain[ed] jurisdiction for the purpose of addressing any issues that arise between the parties *solely regarding the implementation of, or interpretation of, the remedies as awarded*, for a period of 90 days for the parties to raise any such issues and for however long resolution of the issues requires." (Award, Exh. A at 17.) (emphasis added).

79. To challenge an arbitration decision in federal court, the action must be brought within three months of a final judgment. *Occidental Chemical v. International Chemical Workers Union*, 853 F.2d 1310, 1316 (6th Cir. 1988).

80. The arbitrator did not enter an enforceable award against Holtec Decommissioning.

81.     The arbitration award was rendered on April 1, 2024, and other than to solely address remedies, after that date the arbitrator no longer had jurisdiction over this matter; no party timely requested a clerical change.

82.     Then, per the award, any jurisdiction the arbitrator had as to remedies ended June 30, 2024, with no party having requested assistance with the remedy.

83.     The arbitrator no longer has jurisdiction or authority over this arbitration.

84.     The three-month deadline to challenge an arbitration decision in court is July 1, 2024.  (Award, Exh. A at 17.); *Stevens v. Jiffy Lube Int'l, Inc.,* 911 F.3d 1249, 1250–52 (9th Cir. 2018); *Savas v. UBS Financial Srvs., Inc.,* 2007 WL 1768773, *3 (E.D. Mich. 2007).

85.     As of the time of this filing, the Union has not challenged this arbitration award to request the award be modified to render an award against the proper party; the Union no longer has a right to challenge this award.

86.     As a result of the foregoing, pursuant to 29 U.S.C. § 185, enforcement of the arbitrator's award should be stayed pending the Court's determination of its validity, and the award should be vacated and set aside, on the grounds that:

    a.  The arbitrator exceeded his authority by entering an award against an entity that did not agree to arbitrate;

18

b.   The arbitrator was not arguably construing the contract when he entered an award against a party that was not mentioned in the contract.

c.   There is no enforceable award against any entity.

d.   The arbitrator no longer has jurisdiction;

e.   The Union no longer has the right to modify the award; and

f.   No further action can be taken against Holtec Decommissioning related to this arbitration.

## Count II – In the alternative, vacate award against Holtec International or Holtec Decommissioning

87.   Plaintiffs repeat and re-allege paragraphs 1 through as though fully set forth herein.

88.   In the alternative, if the award were somehow deemed to be properly against Holtec International (or against Holtec Decommissioning, instead of against Holtec International), the award should still be vacated, because the arbitrator failed to arguably construe the contract.

89.   An arbitration award is invalid if the arbitrator was not "arguably construing or applying the contract." *Michigan Family Resources*, 475 F.3d at 753.

90.   The arbitrator's interpretation of Section 16(c) effectively deleted the first and second sentences of the paragraph and part of the third sentence.

91.     Treating 143 words as surplusage is re-writing the contract, not construing or applying it, and invalidates the award. *E.g.*, *Dematic Corp. v. Int'l Union, United Auto. Aerospace, & Agr. Implement Workers of Am. (UAW)*, 635 F. Supp. 2d 662, 674 (W.D. Mich. 2009); *Armstrong Cnty. Mem'l Hosp. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 419 F. App'x 217, 222 (3d Cir. 2011).

92.     The arbitrator awarded medical, vision, and dental benefits that were not authorized under the 2022 memorandum of agreement or under the collective bargaining agreement, as amended.

93.     As a result of the foregoing, pursuant to 29 U.S.C. § 185, enforcement of the arbitrator's award should be stayed pending the Court's determination of its validity, and the award should be vacated and set aside, on the grounds that:

> a. The arbitrator was not arguably construing the contract when he effectively struck 143 words from § 16(c) of the collective bargaining agreement;
>
> b. The arbitrator was not arguably construing the contract when he awarded medical, vision, and dental benefits that were not authorized under the agreements.

WHEREFORE, Holtec International and Holtec Decommissioning respectfully request that this Court grant judgment staying the enforcement of the

award and vacating the award in its entirety and award such other relief as may be
just and proper.

Respectfully submitted,

/s/ Aaron D. Lindstrom
Keith J. Brodie (P51636)
Aaron D. Lindstrom (P72916)
BARNES & THORNBURG LLP
171 Monroe Avenue NW, Suite 1000
Grand Rapids, MI 49503

*Counsel for Plaintiffs,*
*Holtec International Corporation and*
*Holtec Decommissioning International,*
*LLC*

21